Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Thank you. Good morning. I do not see Mr. Gilstrap on my screen, but maybe I need to be in a different view. There. Okay. Good morning. Good morning. I can see you now. All right. The first case on our docket today is United States v. Jones. Um, Miss Penrose, are you ready? Yes, Your Honor. May it please the court. My name is Mary Pellant, Marcus Darwin Jones, also known as Dot. Jones reserves four minutes for rebuttal. I was lied to about my plea and misinformed. Jones' own statement sums up the legal issue in this case is a plea based on affirmative misrepresentation, voluntary and knowing. To be clear, this is not an effective assistance of counsel case. Misrepresentations in this case came from the prosecutor, not just Jones's lawyers. In its opposition to Jones's motion to withdraw his guilty plea, the government asserted that sex offender conditions do not apply to Jones, but they do. And the court must resolve whether those misrepresentations, coupled with Jones' reliance on those misstatements, renders his plea constitutionally involuntary and unknowing. Because Jones believes that it does, he asked his court to vacate his conviction. There are three constants in this case. First, the lawyers, including the prosecutor, assured Jones that sex offender conditions would not apply to his plea. Second, Jones asserted they would. And third, since entering his plea before the magistrate judge, Jones has consistently sought to withdraw his plea based on the lawyer's misinformation. And how come he didn't mention that at the sentencing? I mean, he they discussed the plea withdrawal, but they did not. He did not mention the SORNA issue at the sentencing. Why not? You know, Your Honor, I think that's simply because Mr. Jones is not a sophisticated individual. He certainly raised it directly and explicitly in his motion to withdraw his plea. I think his comments at sentencing can be described as inartful. I think in his dialogue with Judge Lindsey, he sought to express his the need to reconsider that motion to withdraw his plea, and he didn't articulate it as clearly as he did in his written motion. But I don't think that means he abandoned the claim at all. In fact, he doesn't understand the difference between the motion to withdraw the plea or a section 22 55. I mean, he started as the proceedings were winding down. He wanted at that moment to file a 22 55 because throughout these proceedings, Mr. Jones has sought to pull the plea. He doesn't know what method to use. He didn't know how to raise that directly with the judge. But he did during sentencing, as you point out, alert Judge Lindsey that he wanted to withdraw the plea. Well, I understand that, you know, a non lawyer isn't the same thing as a lawyer. But my experience with pro se litigants, which is substantial, is that when they have a core point, they're making it all the time, even if it's not artful. And here I don't see that at the sentencing, which is typically you say you people say more rather than less when they're concerned about something because they're given a chance to speak. You know, they have that allocution moment and typically don't get cut off the way other situations may involve. So I'm just trying to understand that piece. I also think it's important that the court look back at the transcript during sentencing. There was this dialogue between Judge Lindsey and Mr Jones, where Mr Jones was trying to explain that some of the evidence was not as the court understood it. And Judge Lindsey never put Mr Jones under oath, and they got into a dialogue about whether he should continue talking. And I think the fact also that previously, Judge Lindsey had advised Mr Jones that may have chilled his speech and his ability to press that point. But I do think when you look at the essence of his claim consistently throughout these proceedings, beginning immediately after the plea, Mr Jones sought to pull that plea, and he based that on Sorna. Well, given the lack of record that we have, isn't this more 22 55 the one he right to think he needed a 22 5 there at the end rather than a direct appeal because a lot of what you're relying on is not in the record. And so isn't that exactly what 22 55 address situations where the record would not support a direct appeal? I don't believe so, Your Honor. I think in this case, this isn't a 22 55. This is a direct appeal. This is the constitutional challenge that the Supreme Court has allowed individuals to demonstrate that their plea is constitutionally invalid, that it did not represent a knowing choice between alternative narratives. And that's because the prosecutor presented to the district court in its most its opposition to Mr Jones motion to withdraw his plea. The prosecutor's position in this case has consistently been that sort of doesn't apply, and that motion is the opposition to the motion to withdraw. Please actually in the record before this court. So I believe the court has ample evidence before it to realize that what the executor and the prosecution has consistently indicated in this case is that sort of doesn't apply when, in fact, it does. And Mr Jones pled guilty based on those assurances. So I don't think this is a 22 55. I don't think the record needs to be expanded, but to the extent it does, this court could certainly remain the case back to the district court to make those assessments itself. Looking at sentencing the PSR in this case cast Jones is a dangerous and repeat sex offender. The district court used the federal sex offense of sex trafficking of a minor to establish Jones base offense level. His Rico conviction is based on 18 U. S. C. 15 91 sex trafficking of Children by force, fraud or coercion. Under Sorna, Section 15 91 is a tier two sex offense, and during rearrangement, Jones was informed that the essential elements of his plea included that he knowingly and willfully committed a crime of violence to further the racketeering. The prosecution then stated that the essential elements of Section 15 91 are the defendant knowingly recruited, enticed, harbored, transported, provided, obtained or maintained by any means Jane Doe one and that defendant committed such act knowing or in reckless disregard that Jane Doe one had not obtained the age of 18 years of age and would be used in a commercial sex act. These essential elements sound of a sex offense covered under Sorna. A trio of Supreme Court cases decided between 1969 and 1971 guide this court's assessment. In 1969, the United States Supreme Court in Boykin held that guilty pleas must be voluntary and knowing to satisfy constitutional standards. In 1970, the court directed reviewing courts to consider all of the relevant circumstances in assessing the voluntary and knowing nature of a plea. That court found that a plea based on assurances that are unfulfilled or unfulfillable is constitutionally involuntary. This circuit in the Amaya case has likewise found that when a defendant is induced by deception, an unfulfillable promise or misrepresentation to enter a plea of guilty, such plea does not meet the constitutional standards of Supreme Court has underscored that for a guilty plea to be voluntary, it must represent a voluntary and intelligent choice among alternative courses of action. The misrepresentations regarding Sorna and his applicability in this case prevented Jones from making an intelligent choice among options. This is not a case where defendant has buyer's remorse because the sentence he received is more severe than he anticipated. Instead, this is a case where a sentence that was promised would not be imposed has been imposed. The complaint isn't one of degree. It is one of kind. Sorna, the federal Sex Offender Registration and Notification Act applies to Jones RICO conviction for the sex trafficking of two separate girls under the age of 15. Sorna's residual clause expands Sorna's application by including within its provisions any conviction for a specified offense against a minor. Jones's conviction qualifies as a specified offense against a minor circuit after circuit, including this circuit, has given broad application to Sorna to meet its stated statutory purpose. This circuit is found that Congress enacted Sorna to protect the public, especially Children from sex offenders and to establish a comprehensive national system for the registration of those offenders. The Gonzalez Medina Cape Court reminded Sorna's language confirms that Congress cast a wide net to ensnare as many offenses against Children as possible. Despite the broad purpose, the government suggests that Sorna's application can be waived by prosecutors or the federal judge. If a judge doesn't check the Sorna box in his judgment, the government contends it doesn't apply. Only that decision of whether to check the Sorna box does not bind the Bureau of Prisons, does not bind the states like Texas, and does not negate the fact that Sorna speaks directly to sex offenders, not judges. Sorna applies to Jones in this case. There are two possible approaches to determine whether Sorna's residual clause covering a specified offense against a minor applies in a given case. The majority view among the circuits is the non categorical or facts specific approach. This approach used by the 4th, 8th, 9th and 11th circuits looks to the underlying facts of the offense rather than merely the statutory elements. This circuit has also indicated its preference for the non categorical approach in both Gonzalez Medina and the Schofield case. The circuit previously stated that excluding a federal statute not consistent with casting a wide net against sex offenders. It seemingly goes against both the language and the structure of Sorna. Jones has repeatedly stated his belief that Sorna applies to his conviction. While that may have been unclear at sentencing, it doesn't change the fact that he is perpetually challenged and has been the only one that's been accurate on this point. Sorna applies to his conviction. Jones is already being subjected to Sorna conditions within the Bureau of Prisons. He knows that its application is not dependent on whether the district court ordered that it applied. The state of Texas can order to Joan can order Jones to register as a sex offender despite any assurances from federal prosecutors or the district court. In a 2002 Iowa case, the Supreme Court of Iowa found that sex offender registration is set by the enforcing agency, not by the courts. Here, the question will be resolved by the Texas Department of Public Safety. Jones pled guilty to a crime with an essential element of recruiting, enticing, harboring, transporting, providing, obtaining or maintaining a person under the age of 18 for use in a commercial sex act. This federal crime aligns with the Texas reportable offense of trafficking of persons, which requires a person younger than 18 that has been transported, enticed, recruited, harbored, provided or otherwise obtained to be trafficked in prostitution, the promotion of prostitution or online promotion of prostitution. This statute is substantially similar to Jones underlying federal conviction. The language is, in fact, is nearly identical. It is ultimately up to the Texas Department of Public Safety to determine substantial similarity. The federal court's decision is not determinative. In fact, Pennsylvania has found that SORNA registration requirements can apply even when the federal court fails to check the SORNA registration box. Its holding was based on state sovereignty. The court found that the state had not agreed to the federal plea agreement, and it also found that the state was not bound by the federal omission in checking the SORNA box. Jones faces a serious threat of sex offender status at the federal level, and that is based on the statutory language itself. This court in past cases has looked to both the structure and the changed language in the amendments under SORNA. I would highlight two provisions. Under 34 USC 2911 Section 5, the title actually reads expansion of sex offense definition. And then when you go down to subsection 7, it also states expansion of definition of specified offense against a minor means an offense against a minor that involves any of the following. And it goes through a group of categories, three of which would clearly apply to Mr. Jones, Section E, Section H and Section I. SORNA's plain language applies to sex offenders. Jones' guilty plea for racketeering based on the trafficking of two separate 15 year old girls, harboring and enticing them to perform prostitution and engaging himself in prohibited sex acts with one of the girls makes him a sex offender under SORNA's plain provisions. Jones told his lawyers this was an issue. The lawyers, based on the prosecutor's assurances, told him it wasn't. The prosecutor told the district court this wasn't an issue in opposing Jones' motion to withdraw his plea. Yet here we are. We're here because Jones was misled. He was told that if he pled guilty, he would be immunized from sex isn't. His guilty plea is based on this inaccurate information, rendering the plea constitutional, constitutionally involuntary and unknowing. This court should vacate Jones' conviction. Thank you, Miss Penrose. You save some time for rebuttal. Mr. Gilstrap. Thank you, Chief Judge Owen. And may it please the court. Stephen Gilstrap on behalf of the United States. This court should not upset a conviction on direct appeal where the district court committed no error, much less a clear and obvious one regarding Mr Jones's guilty plea. The rule 11 colloquy was more than sufficient in this case, and the district court properly struck Jones's motion to withdraw because he filed it pro se when he was represented by counsel. And despite the district court expressly giving Mr Jones the opportunity to file his motion to withdraw correctly and through counsel after it was struck in April of 2019, Jones never did so before he was sentenced. And so the district court, as Judge Haynes pointed out, did not and rightfully did not develop a record on his claims on appeal. Jones tries to get around all that and get this court to look past it and consider documents that are not in the record on appeal and allegations that are outside of the record. Put simply, he wants this court to review his appeal as though he had with evidence attached, and that's something he didn't do below. And if this court is not inclined to do that, Mr Jones is asking to go back to the district court to essentially get a do over to do this time what he did not do the first time. That's something that should be filed as part of the 22 55, as I suggested, where the record is not developed and there is a claim of a constitutional violation. Isn't that exactly what happens in a 22 55? I'm just saying it is the type of thing that happens. That's correct, Judge Haynes. And that's the government's position here, which is there's no error committed by the district court below, let alone a plane or obvious error under the plane air air standard of review. And 22 55 is the proper avenue to raise these claims at the at the end of the day, you would have to write. He would have to write it through ineffective assistance of counsel. Is that your position? Yes, I believe when this court looks at the claim, I was misled by my counsel. I wanted to file my motion to withdraw properly so the district court would consider it. And my counsel never did. So those are claims that sound in ineffective assistance of counsel. What about if he's saying the prosecutor lied to me or I understood X and it was really wise. So my plea is involuntary, but the record doesn't reflect that. And what about the 22 55 on that? Well, so if the record which it, you know, a lot of what's, you know, not in the record in the so called Jones document that's not in the record on appeal, there's an email that gets reference from the prosecutor that Mr Jones relies on in his appellate briefs. But that is an issue because the record is not developed, um, should be addressed in a 22 55 under this court's decision in Higdon Bounds Gully, um, isger. There's a repeated line of precedent where where we're in this situation where there is effectively an ineffective assistance of counsel claim where the record was not developed, especially where the record was not developed through no part of the district court here. The proper avenue to seek relief is not through direct appeal because this court doesn't have everything that it would need at this point in time to fully evaluate. I'm struggling with how this really how this happened. I mean, why would not counsel say, uh, you know, we didn't need to do something about this. Why was this not addressed? That's that's a very good prosecutor insist that this was there was no sort of issue. A couple of answers on that. Um, Chief Judge Owen, it's very unclear from the record why this didn't get addressed below. I mean, what we know is Jones's pro se motion to withdraw was properly struck because he filed a pro se when he was represented by counsel in early April. And between then and sentencing in May, nothing ever got refiled to raise this issue properly. So the district court why the judge certainly that put the judge on notice that we've got an issue here. I'm just I'm just struggling to figure out why this wasn't resolved in the trial court. Well, you know, like I said, I don't think the record fully bears that out. And on the on the point about the prosecutor, a couple a couple points I want to make about that first is the timeline, which I think is really important here. Jones signed a plea agreement in October. He pled guilty in front of the magistrate judge at the end of November. He dated his pro se motion to withdraw in January, January 15th of 2019. The email from the prosecutor that's not in the record but is in the Jones document is dated January 30th after Mr Jones is already alleging through his pro se motion to withdraw sort of doesn't apply to me. And the prosecutor's response to that motion comes in March. So regardless of what the prosecutor is saying by January, Jones doesn't believe it. He believes that he is going to be subject to Sorna and he wants to withdraw his plea. Yet when his motion was struck properly and Judge Lindsay said, I'm not going to consider it unless you file it properly. And through counsel, Jones didn't do anything. He had the opportunity to raise these issues to be heard in front of the district court the first time around, and he didn't do it. Um, also on the prosecutor's point, given the state of case law in this circuit, and this is where on the merits, the plein air standard of review is is really important here because there's no objection to the rule 11 cause we below and because the district court properly struck his pro se motion to withdraw under this court's decision and Sanders that doesn't preserve anything for the purposes of is the government going to agree with him? That sort of applies that he needs to go back and and set aside that guilty plea. I think the record's got to be fully developed on that. Chief Judge Owen. I mean, obviously, under 22 55, you've got the deficient performance prong as well as the prejudice prong. Based on what we know at this point, I can't I can't say with certainty whether he would prevail or not. I do think there is an issue here that's running around that it's important on plein air review, and I there was a deficient performance here. Should this be raised in 22 55? And that's the fact that this court has yet to adopt the non categorical approach to apply the residual cause of Sorna. Um, this court in Sheffield did not reach that issue because it said sort of would apply under the categorical approach or the non categorical approach. And I think whether a racketeering charge can subject someone to Sorna under the residual clause, and I think Jones concedes this and in the in the opening brief requires application of the non categorical approach. You have to get beyond the elements of a racketeering conviction to say that this individual would be subject to Sorna. If he moved to another jurisdiction where they do apply the non categorical non categorical approach, he will be subject to Sorna. I mean, you can see that much. I believe under the non categorical approach. Yes, he would likely be subject to Sorna. But that's speculative that, um, he's gonna move, and I don't think the prosecutor's view of the law was informed on based on anything other than what the Fifth Circuit had held on that. And on this point, the daily decision from the Ninth Circuit that's that cited in the briefing and was cited in the order, um, you know, in response to the Anders brief filed by opposing counsel that came out in November of 2019, six months after he was sentenced here. So this is an area of law that is developing and developing rapidly and again on this appeal in this direct appeal, getting, you know, if this courts, you know, inclined to get to the merits beyond saying we don't have enough here, and this should proceed under 22 55. I don't think this court can say it's clear or obvious in this circuit that Sorna would apply to this defendant because this court has yet to adopt. Let me walk down that path a bit more. I understand the concept that state law, you know, Oklahoma could say you have to register under Oklahoma law. I get that. I want to put that aside for the morning moment because Sorna is federal. And so the question of federal, let me ask this. If he were to bring a 22 55 and lose it on our application of a categorical approach, would that not preclude the United States from forcing him to register under Sorna when he moves to some state in another circuit? I mean, because the U. S. Would still be the same party. Wouldn't it be bound by that ruling? Even if he moves to a different circuit at the federal level, not talking about state courts? Sure. A couple of things on that. Judge Haynes. First of all, I think at this point in time, based on what we know, it is mere conjecture. It is speculation whether B. O. P. Or any other entity, Texas DPS or anyone else is going to subject Mr Jones to Sorna. As we know from this record, Judge Lindsay did not apply the mandatory condition of supervised release that must be applied. If a defendant is subject to Sorna, my guess is it's likely that B. O. P. Is gonna look at that judgment. Nothing beyond that and likely say you're not subject to Sorna. But we're speculating as to what B. O. P. Is going to do on that. No, that's not my question. My question is, if he brings the 22 55 and he loses it because we say Sorna does not apply to this conviction, we the Fifth Circuit. Okay, Fifth Circuit rulings generally don't bind the Ninth Circuit or the Eighth Circuit of the Seventh Circuit. But if he moves to Chicago after we've made that ruling, how could the government, the U. S. Government, not the Illinois government, the U. S. Government prosecute him for failing to register under Sorna after we have said that? Would that not bind the U. S. That's my question. Sorry if I misunderstood Judge Haynes. I believe it probably would because under for a 22 50 motion to be filed for failing to register for Sorna, there's got to be proper notice given to the defendant. If this court holds that in a 22 55, then he's not gonna receive that proper notice. And that gets back to the issue that I was trying to make earlier. And I apologize. Why isn't it race is it litigates? That's my question. That's that's much more basic than notice or any of these other things. You cannot go against a ruling you got unless, of course, Supreme Court sets it aside. You know, blah, blah, blah. I understand there could be situations down the road, but doesn't race to Dakota apply? I'm sorry. I thought I answered the question. Yes, I believe that it would. And I was I was tying it to the notice provision. But, you know, I believe that it would. My overarching point here is I think it's speculative whether anyone's gonna associate gonna tell Mr Jones, whether it's B. O. P. Or the Texas Department of Public Safety, whether Sorna applies, given that the district court here didn't apply the mandatory condition of supervisory release, and nobody has challenged that ruling on appeal. So you have an issue where Sorna is mandatory by its terms, but applying that mandatory condition of supervised release is also mandatory. And I'm not aware of a case that teases that out again, getting back. He's already being treated as a sex offender by the B. O. P. So he is. He's that's a problem right now, not just when he gets out in 204 months, minus however long he's been there down the road. But right now he's being treated as a sex offender, which I gather is different than everybody else in the prison. I don't you know, I saw that reference in the briefing. Your I'm not aware of anything on that. There's nothing in the record on that again, pointing to the fact that under 22 55, the district court would have the ability and to fully develop the record. See what B. O. P. Is doing. See what the, um, see what the release classification, if it's been set yet, would be there's there's nothing on that in the record at this point. Um, moving on to the to the reference about Texas law and the Texas Department of Public Safety Applying Sorna as to Mr Jones. Again, I think this is speculative based on the state of the record and the state of case law here that arguments made for the first time in Jones's reply brief. And again, the Texas statute that, um, Jones argues would apply to him here has an element that includes the basically the person trafficked is a minor. That's not in the racketeering statute. So I think it's speculative. I also think based on the language in the Texas Code of Criminal Procedure, which references elements, you know, it's very likely that Texas applies the categorical approach on this, not the non categorical approach. And if that's the case, then I think it's a very difficult argument to make that Sorna would apply under a categorical approach. Um, quickly, I'd like to address this. The what I've kind of termed the district court did vis a vis the pro se motion to withdraw, um, the guilty plea under this court's precedents. Alvarado House Sanders. The district court was acted properly in striking the pro se motion to withdraw that didn't preserve anything. The district court wasn't required to dig into the car factors for a motion that was properly struck. And so I think there's nothing preserved there under this court's opinion in Perez opinion and the plane air standard of review. There's no no error there. Similarly, on the request to hold a hearing, there's nothing in this court's precedent that suggests that the district court did anything wrong by not holding hearing where the underlying motion had been had been struck as invalid. And so I think those sort of tag along arguments don't suggest any air, let alone a clear or obvious one in the district court. Um, finally, on the on the point about remand, there's a request in the reply brief that this court remand under federal rule of appellate procedure 10 E, um, to supplement the record with the Jones document or other things that are outside the record. I don't believe that that's what rule 10 E is designed to do. It references an error or mistake or something, or there being some lack of clarity as to what went on in the district court below. That's not the case here. We know what went on in the district court. Judge Lindsey properly struck a pro se motion that was filed when the defendant was represented by council. And because of that, there was no record created that anything would be expanding the record beyond what it currently exists. Um, and the alternate request to go back and be able to file a federal rule of civil procedure 60 motion obviously has no applicability in the trial court. It's not a valid basis to go back in, and this court's decisions in Higdon and Bounds, where it is said we don't have a valid. We don't have a sufficient record in front of us to consider these claims. They must proceed in a Section 22 55 action. Those words would have little teeth. If any time there was an insufficient record, this court just remanded to send it back to create a record and do something that Mr Jones failed to do the first time. So I don't think there's any basis in those requests for remand. Um, and for all the sort of reasons that we've discussed because there's no record, um, or sufficient one below and because the district court didn't do anything wrong here. Um, you know, like I said, the rule 11 colloquy was more than sufficient. The striking the pro se motion to withdraw that was filed when Jones was represented by council. That that is absolutely a correct thing to under this court's precedent. So I don't think there's any basis to find error here because the district court did everything right. While there is this question, and I think it's an open question in this circuit, given that this court has not yet applied the categorical or the non categorical approach to Sorna, I think that there may be some issues that need to be fleshed out in a 22 55. And so for those reasons and those outlined in the government's briefing, the United States would request that this court affirm Jones's conviction without prejudice to his being able to raise the Sorna related claims in a section 22 55 action. If the court has no further questions, I'll yield back the remainder of my time. Thank you, Council. Thank you. It's generous. You need to unmute. The government argues in this case that much is speculative, but there is something that is not at all speculative. Jones immediately sought to withdraw his guilty plea because the deal he struck seemed too good to be true. That's because it was. The government doesn't have the authority to weigh Sorna's applicability in a conviction based on the sex trafficking of 2 15 year old girls. Critical to the resolution of this appeal is a standard of review that the court's going to apply. The government argues that they should. The government argues this court should the plane error standard of review, and that's true where this to be a breach of a plea agreement case. But this isn't. Jones's focus is on the U. S. Constitution. He alleges constitutional error, and in that regard, de novo review is the appropriate standard of review. Judge Haines, you asked the question about rescue Dakota and what would happen. But here's the issue or the problem with that sort of speaks directly to sex offenders. It doesn't speak to judges. It doesn't speak to the government, and I'm not sure that under rescue Dakota. That's a defense that Jones could assert. The other thing that poses an impediment here is that the plea agreement itself is limited to the northern district of Texas. I think you used Illinois. Well, if the attorney general, the U. S. Attorney in Chicago takes a different view towards Sorna. I was not talking about the 22 55 because of our ruling. That is what I was raised. You Dakota is not a plea agreement ratio caught is a ruling from a court that binds the parties to it. I understand doesn't buy the U. S. For every case they have. But I'm talking about U. S. Versus Jones doesn't mind. That was my question to him. And what is your answer to that? I'm not sure it does, Your Honor, because, as I said, Sorna speaks directly to sex offenders. And so the question is, is Marcus Jones under this conviction a sex offender? Every circuit, including this circuit. When you look at the Gonzalez Medina case, this circuit focused on the broad structure and language of Sorna. It emphasized Section five that said expansion of sex offense definition emphasized Section seven that said expansion of definition of specified offense against a minor. And it is curious to see the government standing up, saying that a man who is accused of and pled guilty to using to 15 year olds in sex, sex, prostitution and commercial hacks doesn't qualify as a sex offender under Sorna. This circuit would actually be out of step with every other circuit that is rendered a decision on Sorna, as I have not yet found a case in any other circuit that's applying simply the categorical approach. Circuit after circuit is looking at the substance of Sorna. Why does Sorna exist? It exists to protect us as a nation, not as a circuit, not in regions, but to protect the nation from sex offenses committed by individuals. And that is why I think Judge Haynes that the statute speaks to sex offenders and not prosecutors. Because if the government is correct in this case, then prosecutors can wave Sorna application in cases so that Sorna might apply one way in the Fifth Circuit or in the northern district of Texas and an entirely different way in another circuit. I think that undermines the purpose of Sorna. I think it undermines the structure of Sorna. I think it undermines the language of Sorna. This circuit is interpreted Sorna is casting a wide net to snare sex offenders. Jones was told he within that net. But now he does. This court should find that the prosecutor and the defense lawyers erroneous advice renders Jones plea constitutionally invalid. It should be vacated. Thank you. We have your arguments. Miss Penrose, thank you for your representation of Mr Jones. We know that you were court appointed. We appreciate that very much. Thank you. You're welcome, Judge. This case is under submission. Thank you. Thank you.